CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 22 2024
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BRYAN E. HEHL, | ) |
| Plaintiff, | ) Case No. 4:24-cv-00023 |
| v. | ) **MEMORANDUM OPINION** |
| BELK, INC., *et al.*, | ) By:  Hon. Thomas T. Cullen |
| | )      United States District Judge |
| Defendants. | ) |

Plaintiff Bryan Hehl ("Hehl") took his mother Christmas shopping at the Belk department store in Danville, Virginia, on November 17, 2023. Hehl claims that when they got into the store's elevator, his arm came in contact with the elevator door and he was electrocuted. He sued, and Defendant Belk, Inc. ("Belk") now argues that, as a matter of law, Hehl has not made out a case for negligence or negligence *per se* because he has not identified exactly how the elevator door became electrified, what Belk could or should have done to prevent it, or what laws Belk violated. Because Belk demands specific proof before being permitted to discover the facts in Belk's possession, its motion to dismiss for failure to state a claim will be denied as to Counts One, Two, and Four. But because Count Three is merely a restatement of his primary negligence cause of action, the court will grant Belk's motion as to that count.

## I. STATEMENT OF FACTS

On November 17, 2023, Hehl and his mother were Christmas shopping at the Belk department store in Danville, Virginia. (Compl. ¶¶ 1, 4 [ECF No. 1-1].) When they entered the elevator in the store, "the elevator door electrocuted Hehl through contact with his arm

and thereby directly and proximately caused serious and permanent injuries to him." (*Id.* ¶ 5.) As Belk points out in its motion to dismiss, the complaint does not describe how and why the elevator door was electrified such that it caused Hehl to be shocked or electrocuted. But he generally avers that he was electrocuted because of Belk's failure to properly install, maintain, and operate the elevator at its store. He further alleges that Defendants John Does 1 and 2 ("John Does") are liable for his injuries as well because they were entities or persons who also assumed duties to install, maintain, and operate the elevator—by way of contract or another agreement.

Hehl initially filed suit in Danville Circuit Court on April 22, 2024, asserting claims of negligence and negligence *per se* against Belk and John Does. Belk removed the action to this court on May 21, 2024, under 28 U.S.C. § 1441 (ECF No. 1), and filed a motion to dismiss under Rule 12(b)(6) on May 31 (ECF No. 6).[1] Hehl filed a brief in opposition, and Belk replied, making this matter ripe for disposition. Because the discrete legal issues are adequately set forth in the parties' written positions, the court elected not to hold a hearing on Belk's motion.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Belk filed a demurrer and answer in the state court prior to removal. (*See* ECF No. 8.)

- 2 -

While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Overall, the court must "accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016).

### III. ANALYSIS

**A. Count One: Negligence**

Belk argues primarily that, without an explanation as to how the elevator door became electrified, Hehl has failed to state a claim for negligence. Further, it contends that this is not a case where negligence can be inferred under the doctrine of *res ipsa loquitur* ("*res ipsa*"). (*See* Def.'s Reply Br. at 2–3 [ECF No. 10].)

Because this is a diversity case and the injury in question occurred in Virginia, Virginia law applies. *See Lang v. Patients Out of Time*, 689 F. Supp. 3d 259, 270 (W.D. Va. 2023) ("When federal jurisdiction is based on diversity of citizenship, . . . a court typically applies the choice of law rules for the state in which it sits."); *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (noting that "the *lex loci delicti*, or place of the wrong" choice-of-law standard is "the settled rule in Virginia"). Under Virginia law, the doctrine of *res ipsa*

> applies in negligence cases where the instrumentality which caused an injury is within the exclusive possession and control of the person charged with negligence, and such person has, or should have, exclusive knowledge of the way that instrumentality was used, and the injury would not ordinarily have occurred if it had been properly used.

*Danville Comm. Hosp. v. Thompson*, 43 S.E.2d 882, 887 (Va. 1947) (citing *George Foltis, Inc. v. New York*, 38 N.E.2d 455, 459 (N.Y. 1941)). The doctrine "is an evidential presumption, not to be invoked to overcome evidence, but to be applied in its absence. It applies where the injured person is powerless to ascertain the cause." *Id.* at 887 (cleaned up). "[T]he mere fact that an accident occurred does not warrant application of the doctrine. It may be utilized only when the circumstances of the incident, without further proof, are such that, in the ordinary course of events, the incident could not have happened except on the theory of negligence." *Lewis v. Carpenter Co.*, 477 S.E.2d 492, 494 (Va. 1996). "*Res ipsa loquitur* 'never applies in the case of an unexplained accident that may have been attributable to one of two causes, for one of which the defendant is not responsible.'" *Phipps v. Ruby Tuesday, Inc.*, No. 7:12-cv-401, 2013 WL 593483, at *1 (W.D. Va. Feb. 15, 2013) (quoting *id.*).

With this well-established principle in mind, it would seem that if a person is electrocuted by something that, under normal circumstances, is not electrified, and if that thing is under the exclusive possession and control of another, *res ipsa* applies—at least at the pleading stage. *Cf. Andrews v. Appalachian Elec. Power Co.*, 63 S.E.2d 750, 754 (Va. 1951) ("It is well settled in this jurisdiction and elsewhere that under the doctrine of *res ipsa loquitur* proof that an injury has resulted from contact with a highly-charged wire which is under the exclusive operation and control of the defendant and is out of its proper place, raises a *prima facie* presumption that the defendant was negligent in the performance of its duty and throws upon it the burden of overcoming such presumption."). Moreover, a business has an obligation to keep its premises safe for its invitees, and ensuring that the doors of its elevators are not electrified ought to fall under that duty. *See Knight v. Moore*, 18 S.E.2d 266, 269 (Va. 1942) ("The

- 4 -

owner of premises is not an insurer of his invitee's safety thereon. He must use ordinary care to render the premises reasonably safe for the invitee's visit." (internal citations omitted)).

Belk's argument places the cart before the horse. While Hehl's allegations do not *establish* that Belk failed to perform some upkeep that it had a duty to complete, his complaint need not contain that level of specificity. It is, of course, true that a plaintiff must "do more than plead facts that are merely consistent with a defendant's liability; the facts alleged must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (cleaned up). But Hehl's allegations that he was electrocuted by Belk's elevator while shopping at its store are sufficient, at this early stage, to state a claim for negligence against Belk based on the doctrine of *res ipsa*. Obviously, in discovery, Hehl will have to put meat on the bones, but the court will not dismiss an entirely plausible claim before he has had the opportunity to prove it.

## B. Count Two: Negligence *Per Se*

Next, Hehl brings a negligence *per se* claim against Belk. Negligence *per se* "represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].'" *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 872 (Va. 2011) (quoting *Butler v. Frieden*, 158 S.E.2d 121, 122 (Va. 1967)).

> The elements of negligence *per se* are well-established. First, the plaintiff must prove that the defendant violated a statute enacted for public safety. Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. Third, the statutory violation must be a proximate cause of plaintiff's injury.

*Id.* (cleaned up). Here, Belk argues that, because Hehl has not identified any statute or regulation that was allegedly violated, he has failed to state a claim for negligence *per se*. (Def.'s Supp. Br. at 4.) Hehl counters, quite logically, that he *can't* know what statute or regulation—if any—was violated until he has a chance to inspect the elevator and determine the cause of the malfunction (if any). And he can't do that prior to discovery because the elevator in question is under Belk's exclusive control. (*See* Pl.'s Opp'n Br. at 6–7 [ECF No. 9].)

Again, Belk is placing too high a burden on Hehl's pleading. While it is true that Hehl has not identified a specific statute or regulation that was violated, he did allege the following:

> Belk, by its actions and omissions and the actions and omissions of its employees, agents and representatives, and others for whom it is responsible, were guilty of violating the requirements and standards relating to the Elevator established and/or imposed by international, national, federal, state and/or municipal laws, statutes, ordinances, codes, regulations, official public memoranda, customs, usages, and standards, negligently breached the standards and requirements established and/or imposed thereby, and thereby proximately caused Hehl to sustain the injuries, losses, and damages alleged . . . ."

(Compl. ¶ 26.) While that allegation is close to an "unadorned, the-defendant-unlawfully-harmed-me accusation" that would be insufficient to state a claim, *Iqbal*, 556 U.S. at 678, the court finds that Hehl's claim falls just over the line into permissible pleading and provides Belk "fair notice" of what the claim is (negligence *per se*) and the ground upon which it rests (Belk's elevator electrocuting Hehl because it did not comply with relevant laws and regulations). *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Belk's motion to dismiss Count Two will be denied as well.[2]

---

[2] To be sure, if Hehl cannot identify a statute, regulation, or ordinance that Belk violated after discovery, summary judgment would be appropriate on this claim. Moreover, if he identifies any such statute, regulation,

**C. Count Three: Breach of Duty of Utmost Care**

On Count Three, Belk argues that there is no standalone claim for "breach of duty of utmost care;" rather, "utmost care" is merely the standard of care applicable to common carriers. (Def.'s Supp. Br. at 4.) Belk is correct (and Hehl does not seriously dispute the argument (*see* Pl.'s Opp'n Br. at 7)). *See, e.g.*, *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 434 (Va. 2006) (discussing the duty of care for common carriers); *White v. Sears, Roebuck & Co.*, 242 F.2d 821, 823 (4th Cir. 1957) (citing *Murphy's Hotel v. Cuddy's Adm'r*, 97 S.E. 794, 797 (Va. 1919)) ("[I]n Virginia owners of elevators are common carriers and held to the highest degree of care known to human prudence."). Because Count Three is therefore duplicative of Count One, Belk's motion will be granted as to Count Three.[3]

**D. John Doe Defendants**

Finally, Belk argues that Hehl fails to allege sufficient facts against the John Doe defendants and that, in any event, Virginia law does not permit "John-Doe" pleadings except in uninsured motorist cases. (*See* Def.'s Supp. Br. at 4–5 (citing Va. Code Ann. § 38.2-2206(E); *Beutler v. Doe*, 94 Va. Cir. 154, 2016 WL 10880208, at *4 (Va. Cir. Ct. 2016); *Conley v. Bishop*, 32 Va. Cir. 236, 1993 WL 13021727, at *1 (Va. Cir. Ct. 1993)).) Hehl argues that he *can* plead against John Does "when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further

---

or ordinance, he may no longer be permitted to rely on *res ipsa* to establish his negligence claim. *See, e.g.*, *Darden v. Murphy*, 11 S.E.2d 579, 581 (Va. 1940) ("There is no room for [the *res ipsa*] presumption when there is positive affirmative evidence on the subject."). Because a plaintiff may plead alternative theories of recovery, however, Hehl is not barred from relying on two competing theories of negligence at this stage. *See* Fed. R. Civ. P. 8(d)(3).

[3] Hehl states that he set forth Belk's heightened duty of care in a separate count because it was less confusing to separate it from the *res ipsa* doctrine in Count One. The court does not agree, and Hehl's reasoning is not sufficient to maintain an independent claim against Belk.

discovery." (Pl.'s Opp'n Br. at 8 (quoting *Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 WL 903896, at *1 (4th Cir. July 7, 2000)).)

Hehl has the better argument. It is clear that the John Doe defendants are placeholders for the elevator maintenance vendor and the facilities management vendor—whose identities are known to Belk but not to Hehl—and for similar reasons as discussed above for Counts One and Two, the court finds Hehl pleaded sufficient facts to state negligence and negligence *per se* claims against them. Additionally, the Federal Rules of Civil Procedure apply to Hehl's complaint, not Virginia's pleading standards. *See* Fed. R. Civ. P. 81(c)(1) (noting that the federal rules "apply to a civil action after it is removed from a state court"); *Powhatan Cnty. Sch. Bd. v. Halvorsen*, No. 3:24-cv-216, 2024 WL 3834891, at *4 (E.D. Va. Aug. 15, 2024) ("[I]t is therefore the federal standards of pleading that are to be applied to measure the legal sufficiency of a removed complaint." (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438 (1974))); *Hensley v. Wellpath, LLC*, No. 4:24-cv-00014, 2024 WL 3671298, at *8 (W.D. Va. Aug. 6, 2024). As such, the court will deny the motion to dismiss those entities at this time, but the John Doe defendants should be substituted with the correct parties as soon as their identities become known, *see, e.g.*, *Bruce v. Smith*, 581 F. Supp. 902, 905 (W.D. Va. 1984) ("Naming unknown, fictitious, or 'John Doe' defendants in a complaint does not toll the statute of limitations until such time as the names of these parties can be secured. Instead, it amounts to a change of parties under Fed. R. Civ. P. 15(c) and the newly named defendant sought to be substituted for the previously unknown defendant becomes a new party.").

## IV. CONCLUSION

For the foregoing reasons, Belk's motion to dismiss will be granted as to Count Three and denied in all other respects.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 22nd day of August, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE