CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 14 2025
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BRYAN E. HEHL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 4:24-cv-00023 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| BELK, INC., OTIS ELEVATOR CO., and ) | By:  Hon. Thomas T. Cullen |
| JONES LANG LASALLE AMERICAS, ) | United States District Judge |
| INC., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Bryan E. Hehl ("Hehl") alleges that he was electrocuted by an elevator on November 17, 2023, while Christmas shopping with his mother at the Belk department store in Danville, Virginia. Hehl originally sued Belk, Inc., ("Belk") and two John Does in state court. After Belk removed to this court, Hehl substituted the John Doe defendants with named parties: Otis Elevator Company and Jones Lang Lasalle Americas, Inc. ("JLL"). This matter is before the court on JLL's motion to dismiss. JLL argues that Hehl failed to state claims for negligence and negligence *per se* because JLL, as a matter of law, owed no duty in tort to Hehl. The parties briefed the motion, and it is ripe for disposition. Having reviewed the pleadings, the court will deny JLL's motion.

**I.**

On November 17, 2023, Hehl was Christmas shopping with his mother at the Belk department store in Danville, Virginia. (Am. Compl. ¶¶ 1, 4 [ECF No. 18].) When Hehl got onto an elevator at the Belk store, "the elevator door electrocuted Hehl through contact with his arm and thereby directly and proximately caused serious and permanent injuries to him."

(*Id.* at ¶ 5.)

According to Hehl, Belk owns the store property. (*Id.* at ¶ 2.) JLL was Belk's property manager when the incident occurred. (*Id.* at ¶ 36.) Belk, JLL, or both Belk and JLL contracted with Otis Elevator Company to "install, maintain, inspect, and/or repair" the relevant elevator. (*Id.* at ¶ 37.) As JLL highlights in its motion to dismiss, Hehl's amended complaint does not describe why the elevator door electrocuted him. (*See generally* Am. Compl.) Generally, he avers that he was electrocuted because of Belk's failure to properly install, maintain, and/or operate the elevator at its store. Further, he alleges that Otis Elevator Company and JLL are also liable for his injuries because they assumed duties to install, maintain, and operate the elevator but breached those duties, causing the elevator to electrocute or shock Hehl. (*Id.* at ¶¶ 38–39, 42, 48.) Among other things, Hehl alleges that JLL "put, kept, maintained, repaired, or operated the Elevator in a negligent manner creating a dangerous, defective, or hazardous condition." (*Id.* at ¶ 42.)

Hehl initially filed suit in Danville Circuit Court on April 22, 2024, asserting claims of negligence and negligence *per se* against Belk and John Does. Belk removed the action to this court on May 21, 2024, under 28 § U.S.C. 1441 (ECF No. 1), and subsequently moved to dismiss the case under Rule 12(b)(6) (ECF No. 6).[1] Hehl filed a brief in opposition (ECF No. 9), to which Belk replied (ECF No. 10). On August 22, 2024, this court denied Belk's motion to dismiss with regard to Counts One, Two, and Four against Belk and the John Doe defendants for negligence and negligence *per se*. (Mem. Op. Def. Belk's Mot. Dismiss at 9 [ECF No. 11].) As to Count Three, the court granted Belk's motion to dismiss because the claim

---

[1] Belk filed a demurrer and answer in state court prior to removal. (*See* ECF No. 8).

was duplicative of Hehl's negligence claim in Count One. (*Id.* at 7.)

On November 4, 2024, Hehl moved to substitute the John Doe defendants with Otis Elevator Company and JLL. (ECF No. 16.) The court granted Hehl's motion (ECF No. 17), and Hehl filed an amended complaint on November 25, 2024. (ECF No. 18.) Subsequently, JLL filed a motion to dismiss under Rule 12(b)(6). (ECF Nos. 29–30.) Hehl filed a brief opposing the motion (ECF No. 34) to which JLL replied (ECF No. 35).

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See, e.g.*, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "Importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions disguised as factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible if the complaint contains "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 566 U.S. at 678.

### III.

The question before the court is whether Hehl has stated plausible claims against JLL for negligence and negligence *per se*. The court concludes that he has.

As an initial matter, Virginia law applies because this is a diversity case and the injury in question occurred in Virginia. *See Lang v. Patients Out of Time*, 689 F. Supp. 3d 259, 270 (W.D. Va. 2023) ("When federal jurisdiction is based on diversity of citizenship, . . . a court typically applies the choice of law rules for the state in which it sits."); *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (noting that "the *lex loci delicti*, or place of the wrong" choice-of-law standard is "'the settled rule in Virginia'" (quoting *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1993))).

#### A. Negligence

In Count Four, Hehl brings a claim against JLL for negligence. To state a claim for negligence in Virginia, a plaintiff "must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Collett v. Cordovana*, 772 S.E.2d 584, 588 (Va. 2015) (citing *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 830 (Va. 2000)). In its briefs, JLL primarily argues that Hehl did not state a plausible negligence claim against it because he did not sufficiently allege that JLL owed him a common-law duty in tort. Specifically, JLL argues that Hehl only alleged that JLL had a property-management contract with Belk, which cannot give rise to a common-law duty in tort. (Def. JLL's Mem. Supp. Mot.

Dismiss at 6.) Further, JLL claims that Hehl "did not allege that JLL performed or attempted to perform any act in relation to the elevator" that would give rise to a common-law duty in tort. (*Id.*; *see also* Def. JLL's Reply Br. at 5.) The court's ruling on JLL's motion to dismiss therefore turns on whether Hehl has sufficiently alleged that JLL owed him a common-law duty in tort. To answer this question, the court must determine whether Hehl has plausibly alleged that JLL assumed a duty in tort to Hehl that is not barred by Virginia's source-of-duty rule.

To discern whether a claim sounds in contract or tort, Virginia applies a source-of-duty rule that generally bars a plaintiff from bringing a tort claim when the conduct at issue falls within the scope of contractual duties. *See Crosby v. ALG Trustee, LLC*, 822 S.E.2d 185, 189 (Va. 2018). "No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019); *see also Foreign Mission Bd. of S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991) ("[T]he duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." (citation omitted)). "Whether a legal duty in tort exists is a pure question of law." *Tingler*, 834 S.E.2d at 253 (quoting *Brown v. Jacobs*, 768 S.E.2d 421, 424 (Va. 2015)).

Courts draw the line between contract and tort by examining the nature of the duty that was allegedly breached. *Id.* at 254. If the defendant is alleged to be liable for an "act of omission or non-feasance" that would not give rise to any cause of action without proof of a contract to do what was purportedly not done, the cause of action sounds in contract, not tort.

*Id.* at 245–55 (citations omitted). Conversely, if the cause of complaint is for malfeasance—a "lawful act performed in a wrong manner" or an "affirmative, 'wrongful, unlawful, or dishonest act'"—it generally lies in tort. *Id.* at 256–57 (citation omitted). A landlord, for instance, generally cannot be held liable in tort for failure to keep promises to repair property in possession and control of a tenant, but they can be held liable in tort when they make repairs to the "leasehold premises and, in the process of doing so, create[] a dangerous condition by a positive act of negligence on [their] part." *Id.* at 262–63 (citations omitted) (cleaned up). The landlord's "affirmative wrong in creating a dangerous condition" is what gives rise to liability in tort, unlike "a mere failure to do something that one has originally promised to do." *Id.* at 263.

Applying these principles, Hehl has plausibly alleged that JLL had a common-law duty to exercise reasonable care when it tended to the elevator. Even though JLL contracted with Belk for property-management services, the existence of that contract does not negate a distinct duty to exercise reasonable care. *See id.* at 258 ("[N]egligent acts of misfeasance . . . that cause reasonably foreseeable personal injuries could implicate tort liability irrespective of a contractual duty to prudently avoid injuring others during performance of the contract."); *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 870 (Va. 2011) (explaining that a party can be sued for negligence if it breaches a common-law duty that is independent of its contractual duty).

In *Kaltman*, a homeowner alleged that a pesticide contractor was liable for negligence because it applied chemicals containing a toxic ingredient not licensed for residential use. *Kaltman*, 706 S.E.2d at 866–67. The contractor, like JLL, argued that the homeowner's claim

did not sound in tort because it only breached its contractual duty. *Id.* at 868. In rejecting the contractor's argument, the court concluded that the contractor breached "common law and statutory duties independent of the company's contractual duty to control pests" by applying toxic chemicals unfit for residential use. *Id.* at 870; *see also Tingler*, 834 S.E.2d at 257 ("[I]t was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered.").

Similarly, this court recently found that a janitorial contractor breached a common-law duty independent of its contractual duties when it mopped a floor without posting proper warning signs because "the positive act of mopping the floor in a manner that allegedly created a hazardous condition" formed the basis of the plaintiff's claim. *White v. Flagship Facility Servs., Inc.*, No. 7:23-cv-00267, 2023 WL 4420441, at *4 (W.D. Va. July 10, 2023). Conversely, in *Holderfield v. Thyssenkrupp Elevator Corp.*, another court found that a plaintiff who sued a contractor for negligently failing to repair a malfunctioning elevator that caused their harm did not allege a common-law duty. *Holderfield*, No. 120-cv-01599, 2022 WL 980638, *8–10 (E.D. Va. Mar. 30, 2022). There, the court reasoned that the duty sounded in contract because the contractor's obligation to repair the elevator would not have existed but for a contractual agreement, and its failure to repair the elevator was an act of omission or nonfeasance. *Id.* at *10.

Unlike the plaintiff in *Holderfield* who alleged that the contractor failed to repair a malfunctioning elevator, Hehl alleges that JLL "put, kept, maintained, repaired, or operated the Elevator in a negligent manner creating a dangerous, defective, or hazardous condition." (*Id.* at ¶ 42.) Hehl's allegations are more analogous to those of the plaintiffs in *Kaltman* and

*White* because he alleges positive misfeasance in JLL's performance of its contractual duties.[2] (Am. Compl. ¶¶ 38, 42). JLL's duty, on the facts alleged in the amended complaint, therefore lies in tort *in addition to* its contractual obligations with Belk. *See Tingler*, 834 S.E.2d at 254–57, 263. Once JLL assumed its duties, it had an independent duty to exercise reasonable care to prevent foreseeable injuries to foreseeable plaintiffs.[3] *See Burns v. Gagnon*, 727 S.E.2d 634, 643–44 (Va. 2012) ("An actor who fails to exercise reasonable care in performing his undertaking may be subject to liability for physical harm caused not only to the one whom he has agreed to render services, but also to a third person." (citing Restatement (Second) of Torts § 324A (Am. L. Inst. 1965)); *Tuel v. Hertz Equip. Rental Corp.*, 508 F. App'x. 212, 216–20 (4th Cir. 2013) ("Outside the landlord-tenant context, Virginia courts appear to be most receptive to finding a party assumed a duty in tort during the performance of a contract where the injured party (1) was a foreseeable third party, not in privity to the contract; and (2) suffered some physical injury . . . as a result of the actor's negligent performance.").

---

[2] To be sure, Hehl "concedes that if discovery reveals that JLL merely failed to perform some duty it had . . . only by virtue of its contract with Belk," he "would likely not have a tort claim against JLL per Virginia's source-of-duty doctrine." (Pl.'s Mem. Opp'n Def. JLL's Mot. Dismiss at 3–4.) A failure to perform a duty would be analogous to the contractor's failure to repair the elevator in *Holderfield*, which did not give rise to a cause of action sounding in tort. *Holderfield*, 2022 WL 980638, at *10. But Hehl has alleged that JLL performed affirmative acts on the elevator in a manner that created a dangerous, defective, or hazardous condition (Am. Compl. ¶ 42), which is sufficient, at this stage, to state a claim.

[3] JLL relies on *Holles v. Sunrise Terrace, Inc.*, for the proposition that a property manager does not owe a duty in tort to a third party, but its reliance is misguided because that case concerned liability for intentional criminal acts of third persons. 509 S.E.2d 494, 497–98 (Va. 1999). Such liability requires the plaintiff to show that they had special relationship with the defendant in which a right of protection from an intentional criminal act of an unknown third person was inherent. *Id.* Virginia courts have only found these special relationships to exist limited circumstances because willful criminal acts of third parties are ordinarily not reasonably foreseeable. *See A.H. v. Rockingham Pub. Co., Inc.*, 495 S.E.2d 482, 486 (Va. 1998); *Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992). Hehl does not allege that his injuries were caused by any intentional criminal acts of third persons. Instead, he alleges that JLL owed him a duty of reasonable care because it "put, kept, maintained, repaired, or operated the Elevator [that electrocuted him] in a negligent manner." (Am. Compl. ¶ 42). *Holles*, therefore, is not directly on point.

While JLL correctly notes that Hehl did not allege facts showing precisely when or how JLL inspected, serviced, maintained, or worked on the elevator (*see* JLL's Reply Supp. Mot. Dismiss at 5 [ECF No. 35]), such a degree of specificity is not required at this early stage of the proceeding. *See, e.g.*, *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469–70 (4th Cir. 2025) ("To survive a motion to dismiss, a complaint must please with sufficient facts . . . [to] cross the line from conceivable to plausible. However, it need not allege specific facts or establish a prima facie case." (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002)). As Hehl points out, this court—in rejecting a similar argument that Belk made to support its motion to dismiss—was receptive to the fact that Hehl could not know precisely how the elevator door became electrified before embarking on discovery. (Pl.'s Mem. Opp'n Def. JLL's Mot. Dismiss at 4; [ECF No. 34]). The court finds similar pre-discovery considerations relevant here. Rule 12(b)(6) does "not require heightened fact pleading of specifics," just enough facts for the court to be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556). When Hehl responded to JLL's motion to dismiss, he had yet to exchange any discovery with JLL and was in the process of coordinating inspection of the elevator with all defendants. (Pl.'s Mem. Opp'n Def. JLL's Mot. Dismiss at 4 n.1.)

At this early stage of proceedings, Hehl's allegations that he (1) was electrocuted by an elevator that (2) JLL negligently put, kept, maintained, repaired, or operated on Belk's property allow the court to reasonably infer that JLL assumed a duty of care to Hehl. (Am. Compl. ¶¶ 38, 42.) These allegations are sufficient to give JLL "fair notice" of the nature of the claim (negligence) and "the ground upon which it rests" (the elevator electrocuting Hehl because

JLL put, kept, maintained, repaired, or operated it in a negligent manner). *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(quoting *Bell Atl. Corp.*, 550 U.S. at 544, 555). Hehl will certainly have to flesh out his claim through discovery, but the court will not dismiss a facially plausible claim at this stage of proceedings.

### B. Negligence *Per Se*

In Court Four, Hehl also brings a claim against JLL for negligence *per se*. Negligence *per se* "represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].'" *Kaltman*, 706 S.E.2d at 872 (quoting *Butler v. Frieden*, 158 S.E.2d 121, 122 (Va. 1967)).

> The elements of negligence *per se* are well-established. First, the plaintiff must prove that the defendant violated a statute enacted for public safety. Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. Third, the statutory violation must be a proximate cause of plaintiff's injury.

*Id.* (cleaned up). JLL argues that Hehl's claim for negligence *per se* must fail solely because it did not owe Hehl a common-law duty in tort and "negligence *per se* does not create a duty where one did not already exist." (JLL's Mem. Supp. Mot. Dismiss at 8–9 (citing *Steward ex rel. Steward v. Holland Fam. Props., LLC*, 726 S.E.2d 251, 256 (Va. 2012).) Because the court has found that Hehl sufficiently pled a common-law duty in tort, the court will also deny JLL's motion to dismiss Hehl's negligence *per se* claim. Moreover, for the reasons stated in the court's prior opinion, Hehl has adequately alleged that JLL violated applicable safety statutes and regulations in relation to its maintenance of the elevator (*see, e.g.*, Am. Compl. ¶ 38(d)), and those allegations—though sparse—are sufficient at this early stage to permit this case to

- 10 -

proceed. (*See* Mem. Op. at 5–6, Aug. 22, 2024 [ECF No. 11].)

## IV.

Given that the court must accept the facts alleged and draw all inferences in favor of the plaintiff at this stage of proceedings, it cannot say that Hehl's claims against JLL must fail as a matter of law. The court concludes that Hehl has sufficiently alleged that JLL assumed a duty in tort, breached that duty, and proximately caused injuries to Hehl as a result. Accordingly, his negligence and negligence *per se* claims survive JLL's motion to dismiss, and JLL's motion will be denied.

The clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 14th day of May, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE